[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION FOR PREJUDGMENT REMEDY
The principal issue involved in the application before the court is whether the plaintiffs are entitled to garnish bank accounts held jointly by the defendants and a nonparty. The court concludes that, under the circumstances of the present case, the plaintiffs are not entitled to the requested prejudgment remedy.
From the evidence presented at the prejudgment remedy hearing, the court finds the following facts were established insofar as probable cause is concerned. On June 13, 1988, a car owned by the defendant, Natalie L. Snihur and driven by the defendant. Darjusz Z. Snihur, collided with a car driven by the plaintiff, Randi B. Somers, injuring her and damaging her car. The collision was caused by the negligence of the defendant, Darjusz Z. Snihur. At all pertinent times, Darjusz Snihur operated with general authority the motor vehicle owned by defendant, Natalie Snihur, as a family car. As a result of the negligence of Darjusz Snihur, imputable to the defendant, Natalie Snihur, the plaintiff, Randi Somers, suffered various injuries, expenses and losses and the plaintiff, James Somers, suffered a loss of consortium. The court finds probable cause that plaintiff will recover a judgment against the defendants in the amount of $300,000. Defendants are insured to the extent of $50,000.
The plaintiffs brought this proceeding seeking a prejudgment CT Page 1624 remedy by way of garnishing numerous bank accounts located in People's Bank of Bridgeport and Mechanics and Farmers Savings Bank also of Bridgeport. Some of the accounts carried the names of the defendants, themselves, exclusive of their mother's name. However, many of the accounts in question contain the names of one or both defendants, along with their mother, Eugenia Snihur, all in joint names with right of survivorship.
As to all those joint accounts, Eugenia Snihur was the sole and exclusive contributor of funds. The defendants made no contributions to the accounts. Eugenia Sinhur's sole purpose in placing the accounts in joint names with one or more of her children was for her own convenience, to enable them to make withdrawals during her lifetime for her use and benefit, but recognizing that the account structure would enable them to acquire ownership of the balance of the funds in the accounts upon her death. Eugenia Snihur had no intent to transfer to the defendant any present interest or to make any present gift to them. According to the understanding of Eugenia Snihur and her children, the latter were not entitled to withdraw funds for their own use or purposes during their mother's lifetime, in the absence of specific permission to do so.
The joint accounts in question were, for the most part, originally held in the names of Mrs. Snihur and her husband, Ilko Snihur. Upon his death in 1984, the monies in the survivorship accounts passed directly to Eugenia Snihur. Most of the monies in those joint accounts represented the life savings of Eugenia and Ilko Snihur as well as funds received in a worker's compensation claim of Ilko Snihur. Eugenia Snihur receives the income from the accounts and reports the interest on her federal income tax returns. The defendants and their mother had the right to withdraw from all joint accounts without the necessity of producing the passbook.
"Prejudgment remedy' means any remedy or combination of remedies that enables a person by way of attachment, foreign attachment, garnishment or replevin to deprive the defendant in a civil action of, or affect the use, possession or enjoyment by such defendant of, his property prior to final judgment but shall not include a temporary restraining order. Conn. Gen. Stat. 52-278a(d) (rev'd to 1989); Fermont Division v. Smith, 178 Conn. 393,398 (1979). An applicant must comply with the provisions of Conn. Gen. Stat. 52-278 a-g, which govern prejudgment remedies, in order to obtain such a remedy. Conn. Gen. Stat. 52-278b (rev'd to 1989); Essex Group, Inc. v. Ducci Electric Company, Inc.,181 Conn. 524, 525 (1980). The plaintiffs have satisfied all statutory requirements.
A bank account in joint names which provides for payment to CT Page 1625 any of the parties, or the survivor of them, is a joint tenancy. See Driscoll v. Norwich Savings Society, 139 Conn. 346, 349
(1952); U.S. v. Third Nat. Bank Trust Co., 111 F. Sup. 152
(M.D.Pa. 1953). In Connecticut a joint tenancy is subject to attachment. New Haven Trolley Bust employees Credit Union v. Hill, 145 Conn. 332, 336 (1958).
Under Conn. Gen. Stat 36-3 (1) (revised to 1989) each joint owner is considered an owner of the funds. Further, "[u]nder Connecticut law, co-holders of a joint account are each considered owners of the entire account, with access to the entire amount therein. U.S. First Bank 586 F. Sup. 174, 176 (D.C. Conn. 1983).
Connecticut courts have not yet addressed the issue presented by this application for prejudgment remedy.
In other jurisdictions which have addressed this issue, most courts are agreed that a joint bank account is garnishable at the behest of a creditor of the depositors. However, in jurisdictions where the joint bank account is considered vulnerable to the process of the creditor of a depositor, garnishment to the extent of the debtor's equitable ownership of the funds seems to be the general rule. See Annotation at 11 ALR3d 1465 at 1468-1469.
The reasoning which leads to this result has been stated as follows:
 "Although money on deposit in a bank is commonly considered the `property' of the depositor, the relationship in fact between him and the bank is that of debtor and creditor, the amount on deposit representing merely an indebtedness by the bank to the depositor. This erroneous characterization probably results from the fact that since the deposit is due on demand in most cases, it gives the appearance of being held in specie in the bank's vaults for the depositor, and hence the treatment of it as tangible property rather than as the intangible chose in action that it is. On the other hand, since joint bank accounts are opened by depositors for many and varied reasons that do not necessarily coincide with the legal effect of the agreements and signature cards that they sign, the `property' concept has furnished a convenient vehicle for the application of equitable principles apparently necessary where a creditor seeks to garnish a chose in action in which someone other than the debtor CT Page 1626 has an interest. Thus, recognition of the `property' interests of the depositors accommodates the determination whether to allow the garnishment as to all or only a part of the funds on deposit."
Where garnishment only to the extent of the depositor's interest is allowed, the debtor may be rebuttably presumed to own, half or even all of the account, depending on the law of the purchaser jurisdiction, and the burden of proving otherwise in such cases falls upon the nondebtor depositor. Purma v. Stark,224 Kan. 642, 585 P.2d 991 (1978). There are several cases holding to the contrary, namely, that the burden of proof lies with the seizing creditor. See 11 ALR3d 1465 at 1469 and cases cited therein.
Analysis of numerous cases from other jurisdictions leads to the conclusion that the principles and reasoning adopted by the Supreme Courts of Mississippi and Hawaii respectively in Delta Fertilizer, Inc. v. Weaver, 547 So.2d 800 (Miss. 1989) and Traders Travel International v. Howser, 753 P.2d 244 (Hawaii 1988), are the most persuasive.
In those cases, the courts adopted the following principles which they considered to be the prevailing standards: (1) the garnishment of a joint bank account, held in joint tenancy, may reach only the interest equitably owned by the debtor (2) although there is a rebuttable presumption that the joint owner of a joint bank account owns the entire account, such presumption may be overcome by parol evidence; (3) the burden of proof on a claim that the account is owned other than to that extent lies with the party asserting such claim; (4) should the debtor fail to establish by a preponderance of the evidence that he or she does not equitably own the whole joint account, then the creditor may garnish all the deposits therein.
In so ruling, the Supreme Court of Mississippi in Delta Fertilizer, supra., at 803 stated:
 "It is our view that under the facts in this case the court should have held all of the joint bank account was prima facie subject to garnishment, and that the burden was on each joint depositor to show what portion of the funds he or she actually owned. We believe this is the fair and reasonable rule because the depositors are in a much better position than the judgment creditor to know the pertinent facts. 237 Ark. at 352, 281 S.W.2d at 753-754, 11 A.L.R.3d at 1463-1464."
CT Page 1627
It may be noted that, in that case, a fact situation similar to the present case existed. There the court held that, because the mother had established that all of the funds in the account in question were hers and that her son had been added to the account for her convenience so that he could do her banking, no garnishment would be allowed.
This court, as noted above, finds the foregoing principles and reasoning highly persuasive and adopts them for application to the facts of this case.
Here, the defendants clearly established that they had no equitable interest in the funds held jointly with their mother. Applying the principles above adopted to these facts, the court concludes that the plaintiffs are not entitled to garnish any of the funds in any joint accounts bearing Eugenia Snihur's name as she is the sole equitable owner of those funds. Based on that conclusion, it is evident that Eugenia Snihur had the right to withdraw her funds prior to the prejudgment remedy hearing.
The plaintiffs may garnish to the extent of $250,000. funds in the other bank accounts disclosed and existing as of the date of the prejudgment hearing on December 10, 1990.
BARRY R. SCHALLER, JUDGE